UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— X

EXCHANGE LISTING, LLC                          :
                                               :
                          Plaintiff,           :        Case No. 21-cv-7557 (KPF)
                                               :
             -against-                         :
                                               :
INSPIRA TECHNOLOGIES, LTD., A/K/A              :
INSPIRA TECHNOLOGIES OXY B.H.N. LTD.           :
                                               :
                          Defendants.          :

———————————————————————— X


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Gerry Silver, Esq.
Anna Lea Setz, Esq.
SULLIVAN & WORCESTER LLP
1633 Broadway
New York, New York 10019
Phone: (212) 660-3000
Fax: (212) 660-3001
gsilver@sullivanlaw.com
asetz@sullivanlaw.co

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ......................................................... 1

RELEVANT ALLEGATIONS IN THE AMENDED COMPLAINT ........................................... 3

ARGUMENT ................................................................................ 7

POINT I      THE FRAUDULENT INDUCEMENT CLAIM (COUNT I) SHOULD BE DISMISSED ................................................................. 7

    A.    Plaintiff Merely Alleges An Unfulfilled Promise, Not A Misstatement Of Fact .... 7

    B.    Plaintiff Fails To Allege Reasonable Reliance ....................................... 8

POINT II     THE UNJUST ENRICHMENT AND QUANTUM MERUIT CLAIMS (COUNTS II AND III) SHOULD BE DISMISSED ............................................. 11

POINT III    THE BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM (COUNT IV) SHOULD BE DISMISSED ............................................. 11

POINT IV    THE COMMON LAW FRAUD CLAIM (COUNT V) SHOULD BE DISMISSED ................................................................. 12

    A.    Plaintiff Merely Alleges An Unfulfilled Promise, Not A Misstatement Of Fact .. 13

    B.    The Fraud Claim Is Duplicative of The Breach Of Oral Contract Claim .............. 13

    C.    Plaintiff Fails To Allege Reasonable Reliance ....................................... 15

POINT V     THE BREACH OF WRITTEN CONTRACT CLAIM (COUNT VI) SHOULD BE DISMISSED ................................................................. 16

POINT VI    THE BREACH OF ORAL CONTRACTCLAIM (COUNT VII) SHOULD BE DISMISSED ................................................................. 16

POINT VII   THE ATTORNEYS' FEE CLAIM (COUNT VIII) SHOULD BE DISMISSED .19

CONCLUSION ............................................................................. 20

4893-5311-8983, v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Amable v. New School,
  2021 WL 3173739 (S.D.N.Y. July 27, 2021)............................................................................11

Brittain v. Trustees of Columbia University in the City of New York,
  2021 WL 3539664 (S.D.N.Y. August 11, 2021)......................................................................11

Colonial Funding Network, Inc. v. Epazz, Inc.,
  252 F. Supp. 3d 274 (S.D.N.Y. 2017) .................................................................................7, 8

Cosgrove v. Or. Chai, Inc.,
  520 F. Supp. 3d 562 (S.D.N.Y. 2021) .....................................................................................3

Cruz v. FXDirectDealer, LLC,
  720 F.3d 115 (2d Cir. 2013) .................................................................................................12

Emergent Capital Inv. Mgt., LLC v. Stonepath Group, Inc.,
  165 F. Supp. 2d 615 (S.D.N.Y. 2001) ...................................................................................10

Everlast World's Boxing Headquarters Corp. v. Trident Brands Inc.,
  2020 WL 917058 (S.D.N.Y. February 26, 2020).......................................................15, 17, 18

Gutkowski v. Steinbrenner,
  680 F. Supp. 2d 602 (S.D.N.Y. 2010) ...................................................................................14

Harsco Corp. v. Segui,
  91 F.3d 337 (2d Cir. 1996) ...................................................................................................10

Maniolos v. United States,
  741 F. Supp. 2d 555 (S.D.N.Y. 2010) ...................................................................................16

Manufacturers Hanover Overseas Capital Corporation v. Southwire Company,
  589 F. Supp. 214 (S.D.N.Y. 1984) ........................................................................................18

Muhan Cui v. Xia,
  2021 WL 925480 (E.D.N.Y. March 2, 2021)...........................................................................9

National Commercial Bank & Trust Co. v. Bart Boat Co., Inc.,
  41 A.D.2d 159, 341 N.Y.S.2d 347 (3d Dep't.1973) ......................................................... 18-19

Ricatto v. M3 Innovations Unlimited, Inc.,
  2019 WL 6681558 (S.D.N.Y. Dec. 6, 2019) (Failla J.) ................................................ *passim*

4893-5311-8983, v.1

Stone v. Schulz,
    231 A.D.2d 707, 647 N.Y.S.2d 822 (2d Dep't 1996) ............................................................8

Sussman Sales Company, Inc. v. VWR International, LLC,
    2021 WL 1165077 (S.D.N.Y. March 26, 2021) (Failla, J) ............................................. 11-12

The Phoenix Companies, Inc. v. Concentrix Insurance Administration Solutions Corporation,
    2021 WL 3604663 (S.D.N.Y August 12, 2021) (Failla, J.) ........................................8, 10, 13

Towers Charter & Marine Corp. v. Cadillac Ins. Co.,
    894 F.2d 516 (2d Cir. 1990) .......................................................................................................17

U.S. Capital Partners v. Stanwich Capital Advisors, LLC,
    2015 WL 4388421 (S.D.N.Y. July 17, 2015 (Failla, J.)................................................. 14-15

**Statutes**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 1, 3

Defendant Inspira Technologies Oxy B.H.N. Ltd. ("Inspira" or "Defendant") submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Amended Complaint ("AC"; ECF No. 9) of plaintiff Exchange Listing, LLC ("Plaintiff").

## PRELIMINARY STATEMENT

This is a finder's fee dispute where Plaintiff concedes in its Amended Complaint that it did not meet the criteria for a finder's fee under the subject Capital Market Advisory Agreement between the parties dated September 30, 2020 (the "Agreement"; AC Ex. 2).  In particular, in order to earn a finder's fee, Plaintiff, inter alia, was required to introduce to Inspira the banker (i.e., the "Introduced Banker") who completes the initial public offering ("IPO") for Inspira.  Plaintiff concedes that it did not introduce the banker who completed the IPO.  Indeed, Plaintiff accurately pleads that the banker it introduced was terminated by Inspira for failing to complete an IPO. Hence, its breach of written contract claim –  tellingly its sixth cause of action – clearly fails.

Realizing that the express language of the Agreement bars the finder's fee it seeks, Plaintiff transparently tries to plead around the written Agreement by purporting to assert a laundry list of claims that are also barred by the express language of the Agreement and/or applicable governing New York law (Agreement § 11.A), namely fraudulent inducement, unjust enrichment, quantum meruit, breach of the covenant of good faith and fair dealing, fraud, and breach of oral contract. As more fully set forth below, these claims fail.

First, Plaintiff's fraudulent inducement claim (that Inspira allegedly promised Plaintiff a "75% floor" or minimum compensation when Inspira allegedly had no intent of paying the floor) fails because it is promissory in nature and not a presently existing misstatement of fact.  Further, Plaintiff fails to allege reasonable reliance given that these alleged terms are expressly contradicted by the compensation provisions of the Agreement, as well as the merger, integration and no

reliance on oral representation clauses in the Agreement, which collectively provide that Plaintiff is not and cannot rely on any promise or representation not expressly set forth in the Agreement. (See Point I, infra).

Second, given that Plaintiff pleads that the Agreement is an enforceable contract between the parties, its second and third claims for unjust enrichment and quantum meruit fail because, under New York law, quasi-contract claims only apply in the absence of an express agreement. Here, the quasi-contract claims cover the exact same subject matter as the Agreement and therefore fail as a matter of law.  (See Point II, infra).

Third, Plaintiff's claim for breach of the covenant of good faith and fair dealing fails because it is based on the same facts as its breach of contract claim and should be dismissed as duplicative (see Point III, infra).

Fourth, Plaintiff's common law fraud claim fails because it is based on an alleged post-Agreement promise by Inspira to provide Plaintiff with 75,000 shares if Plaintiff continued to perform under the Agreement, and is therefore promissory in nature, and not based on a false statement of presently existing fact.  Further, it is virtually identical to its breach of oral contract claim and therefore fails for being duplicative.  Moreover, Plaintiff fails to allege reasonable reliance given the clauses barring reliance on oral modifications to the Agreement and providing that the Agreement can only be amended by a writing signed by both parties.  (See Point IV, infra).

Fifth, as set forth above, Plaintiff's breach of written contract claim fails because, based on Plaintiff's own allegations, Plaintiff failed to meet the criteria for a finder's fee or additional compensation (see Point V, infra).

Sixth, Plaintiff's claim for breach of oral contract claim, which, like its fraud claim, alleges that, post-Agreement, Inspira promised to provide Plaintiff with 75,000 shares if Plaintiff

2

continued to perform under the Agreement, fails as a matter of law because the Agreement includes two "no oral modification clauses" that prohibit oral agreements and amendments to the Agreement that are not in writing and executed by both parties.  No such writing exists.  Further, pursuant to the Agreement, Plaintiff was required to continue performing, and therefore this claim fails for a lack of consideration as well.  (See Point VI, infra).  Plaintiff's claim for attorneys' fees fails because Plaintiff is not the prevailing party (See Point VII, infra).

## RELEVANT ALLEGATIONS IN THE AMENDED COMPLAINT[1]

Plaintiff alleges that, in or about September 2020, the parties discussed Plaintiff providing capital markets services to assist Inspira "to better achieve its financial goals of trading on Nasdaq Capital Markets ('Nasdaq') through an initial public offering of Defendant's securities (the 'IPO')" (AC ¶ 18).  Plaintiff alleges that Inspira "proposed a plan to Plaintiff, stating that as long as Plaintiff did the work required, Plaintiff would minimally receive a minimum amount of cash, plus 75% of the main success fee, and 75% of the total warrants in the event of a successful IPO" (AC ¶ 33).  Plaintiff refers to this alleged proposal throughout the Complaint as a "'floor' of 75%", or a "Floor" (see, e.g., AC ¶¶ 38, 121, 157-162), and it is referred to herein as a "Floor" or a "75% Floor".

Plaintiff alleges that, thereafter, on or about September 30, 2020, Plaintiff and Inspira entered into the written Agreement, which Plaintiff concedes did not "reflect these statements" regarding any Floor (AC ¶ 17 and Ex. 2 thereof; ¶ 35).[2]  The Agreement does not provide for any "Floor". To the contrary, the Agreement provides that Plaintiff can only earn stock, warrants or compensation in only three ways, as follows.

---

[1] For purposes of this motion to dismiss only, the factual allegations in the Amended Complaint are taken as true.

[2] "'In deciding a Rule 12(b)(6) motion, the court may consider . . . documents attached ... or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" Cosgrove v. Or. Chai, Inc., 520 F. Supp. 3d 562, 574-75 (S.D.N.Y. 2021) (quoting Hu v. City of N.Y., 927 F.3d 81, 88 (2d Cir. 2019)).

4893-5311-8983, v.1

First, the Agreement provides that, in return for Inspira providing the general capital markets services set forth in the "Scope of Work", which includes providing services to assist Inspira in achieving an IPO (see, e.g., Agreement §§ 1.C.1.2, 1.C.1.3 and 1.C.1.4), Inspira "agrees to compensate the Consultant [Plaintiff] in the following manner as consideration of the Services to be rendered thereunder", and provides for Plaintiff to receive 150,000 warrants (the "Warrants") (Agreement § 4). There is no dispute in this action that Plaintiff received the equivalent of the 150,000 warrants – Plaintiff does not allege otherwise. Indeed, Plaintiff concedes that it received such stock in the form of 4,082 shares (AC ¶ 51 n.1).

Second, the Agreement provides for Plaintiff to potentially earn additional compensation, i.e., a finder's fee, if certain contingencies occur, namely (i) the closing of a financing of at least $1.5 million with 60 days of "commencement" of the agreement, i.e., the execution date of September 30, 2020 (defined as "Safe Financing") or (ii) if Plaintiff introduces to Inspira the investment banker who actually underwrites and completes an IPO for Inspira, defined as an "Introduced Banker" (Agreement § 1.C.1.3 (defining Introduced Banker as: "Introduce the Company to investment bankers (the 'Introduced Banker') to underwrite the IPO"). In particular, the Agreement provides:

> Subject to either of: (i) the closing of a financing of at least $1,500,000 (the "*Safe Financing*") within the specified timeline attached hereto as Schedule A, or (ii) the *Company's retention of any of the Introduced Bankers with whom the company completes an IPO* within 12 months, and unless this Agreement is terminated as provided in Section 9 hereof, as additional compensation, the Company agrees to compensate the Consultant as follows:
>
> A. $5,000 per month with such amount to commence accruing upon retention of an Introduced Banker and with the payments to commence upon completion of the Safe Financing;.
>
> B. A bonus of $25,000 upon completion of the Safe Financing;
>
> C. $50,000 payable at such time as the Company completes the IPO;

4

> D. The Company will issue the Consultant, shares of the Company's common stock at such time as the Company completes its IPO in accordance with the fee schedule set forth in Schedule B attached hereto . . . .

(Agreement §§ Section 2, 4 and Schedule B (emphasis added)).

There is no dispute that a Safe Financing did not occur and Plaintiff does not allege otherwise.  Further, Plaintiff concedes that no "Introduced Banker" supplied by Plaintiff completed the IPO – rather, the IPO was completed by another banker who was not introduced by Plaintiff (compare AC ¶¶ 64-66 (listing Introduced Bankers introduced by Plaintiff to Inspira) with ¶ 100 (stating that Aegis Capital ("Aegis") completed the IPO, and Aegis was not listed by Plaintiff as an Introduced Banker).

Indeed, Plaintiff concedes that The Benchmark Company, LLC ("Benchmark"), one of the listed Introduced Bankers introduced by Plaintiff (AC ¶ 65), was terminated by Inspira "for failure to close the IPO" (AC ¶ 170).  In any event, as no Safe Financing occurred and an Introduced Banker did not complete the IPO, no finder's fee is due.

Third, under the Agreement, the only other manner in which Plaintiff could earn additional compensation (i.e., compensation in addition to the 150,000 warrants or equivalent) is in the event the Agreement is terminated, i.e., a termination fee.  In particular, the Agreement provides, in relevant part, that if the Agreement is terminated, "the Company [Inspira] is still obligated to pay: "(i) if the IPO is consummated within six (6) months of termination, seventy-five percent (75%) of the compensation set forth in section 4" (Agreement  § 9).  However, Plaintiff expressly pleads that the Agreement was not terminated (AC ¶¶ 62, 101) Hence, Plaintiff is not entitled to the termination fee or any other additional compensation.

Nevertheless, Plaintiff purports to assert claims based on purported pre-Agreement and post-Agreement oral representations, which are barred by the express terms of the Agreement set

forth above, as well as the following additional clauses in the Agreement.

In particular, the Agreement includes not one but two clauses stating that the Agreement is the entire agreement between the parties and providing that no prior oral representations not expressly set forth in the Agreement have been made or can be relied upon (Agreement at §§ 11.C. and 11.J. ("Merger Clauses")).  The Agreement also contains not one but two clauses providing that the Agreement may only be amended by a writing signed by both parties (Agreement at §§ 11.C. and 11.K ("No Reliance Clauses")), which never occurred.  These clauses provide:

> 11. C. *Complete Agreement*. This Agreement supersedes any and all of the other agreements, either oral or in writing, between the parties hereto with respect to the subject matter hereof and contains all of the covenants and agreements between the parties with respect to such subject matter in any manner whatsoever. *Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by any party, or anyone herein, and that no other agreement, statement or promise not contained in this Agreement shall be valid or binding. This Agreement may be changed or amended only by an amendment in writing signed by all of the Parties hereto*. (Emphasis added).

> 11. J. *Entire Agreement*. This Agreement, together with the documents and exhibits referred to herein, embodies the entire understanding among the parties and merges all prior discussions or communications among them, *and no party shall be bound by any definitions, conditions, warranties, or representations other than as expressly stated in this Agreement, or as subsequently set forth in writing, signed by the duly authorized representatives of all of the parties hereto*. This agreement, when executed shall supersede and render null and void any and all preceding oral or written understandings and agreements. (Emphasis added).

> 11. K. *No Oral Change; Waiver. This Agreement may only be changed, modified, or amended in writing by the mutual consent of the parties hereto. The provisions of this Agreement may only be waived in or by a writing signed by the party against whom enforcement of any waiver is sought.* (Emphasis added).

For the reasons set forth below, the Amended Complaint should be dismissed.

## ARGUMENT

## POINT I

### THE FRAUDULENT INDUCEMENT
### CLAIM (COUNT I) SHOULD BE DISMISSED

"The elements of a fraud cause of action consist of 'a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission and injury.'" Colonial Funding Network, Inc. v. Epazz, Inc., 252 F. Supp. 3d 274, 283-84 (S.D.N.Y. 2017) (quoting Pasternack v. Lab Corp. of Am. Holdings, 27 N.Y.3d 817, 37 N.Y.S.3d 750, 756 (2016)).

Plaintiff's claim for fraudulent inducement is based on its allegations that Inspira, prior to the execution of the Agreement, "promised a 'floor,' so that no matter what, Plaintiff would receive some compensation"; Plaintiff "reasonably relied on Defendant's promise of a Floor of 75%"; and therefore Plaintiff is owed not less than $1 million (AC ¶¶ 119-131).  Plaintiff concedes these terms are not in the Agreement (AC ¶ 35).

### A.    Plaintiff Merely Alleges An Unfulfilled Promise, Not A Misstatement Of Fact.

The fraudulent inducement claim fails because the alleged misrepresentation – the promise of a 75% Floor – is promissory in nature relating to future conduct and is not a false statement of presently existing fact.  "Indeed, '[i]t is a general rule that a claim of intentional misrepresentation cannot be predicated upon statements which are promissory in nature at the time they are made and which relate to future actions or conduct, because mere unfulfilled promissory statements as to what will be done in the future are not actionable." Ricatto v. M3 Innovations Unlimited, Inc., 2019 WL 6681558, at *10 (S.D.N.Y. Dec. 6, 2019) (Failla J.) (dismissing fraudulent inducement claim at pleading stage because, inter alia, it was promissory in nature) (quoting Exceed Holdings

7

LLC v. Chi. Bd. Options Exch. Inc., 2018 WL 4757961, *4 (S.D.N.Y. Sept. 30, 2018); Phoenix Companies, Inc. v. Concentrix Insurance Administration Solutions Corporation, 2021 WL 3604663, *16 (S.D.N.Y August 12, 2021) (Failla, J.) (same).

"'To fulfill the element of misrepresentation of material fact, the party advancing the claim must allege a misrepresentation of present fact rather than of future intent.'" Phoenix, 2021 WL 3604663 at *16 (quoting Perella Weinberg Partners LLC v. Kramer, 153 A.D.3d 443, 58 N.Y.S.3d 384, 390 (2017) (dismissing fraudulent inducement claim "premised on [party's] lack of intent to abide by its representations in the future" as "insufficient to establish materially false representations").  Here, the alleged promise of a 75% Floor of compensation is not a presently existing fact but a promise of future performance and therefore the claim should be dismissed.

**B.**    **Plaintiff Fails To Allege Reasonable Reliance.**

The purported promise of a 75% Floor is expressly contradicted by the written agreement, and therefore Plaintiff fails to allege reasonable reliance.  "'Under New York law, reasonable reliance is precluded when "an express provision in a written contract contradicts a prior alleged oral representation in a meaningful fashion."'" Colonial, 252 F. Supp. 3d at 284 (quoting Republic Nat'l Bank v. Hales, 75 F. Supp. 2d 300, 315 (S.D.N.Y. 1999)) (motion to dismiss granted when allegation that plaintiff misled into believing payment obligation was absolute when it was actually contingent was contradicted by terms of the written agreement); Stone v. Schulz, 231 A.D.2d 707, 707-08, 647 N.Y.S.2d 822, 823 (2d Dep't 1996) ("[w]here, as here, there is a 'meaningful' conflict between an express provision in a written contract and a prior alleged oral representation . . . plaintiff will be unable to establish that he reasonably relied on the alleged oral representations").

Here, as set forth above, the Agreement expressly does not provide for a 75% Floor of compensation.  The Agreement only provides for compensation in three ways: (i) the 150,000

warrants, the equivalent of which were indisputably provided; (ii) a finder's fee based on a Safe Financing or if the IPO was completed by an Introduced Banker introduced by Plaintiff, and Plaintiff alleges that neither occurred; or (iii) a termination fee if the Agreement was terminated, and Plaintiff alleges that the Agreement was not terminated.  Hence, this claim is expressly contradicted by the Agreement and Plaintiff fails to plead reasonable reliance.

Indeed, the lack of reasonable reliance is bolstered by the merger and disclaimer provisions in the Agreement.  See, e.g., Muhan Cui v. Xia, 2021 WL 925480, *5-6 and n.7 (E.D.N.Y. March 2, 2021) (fraudulent inducement claim dismissed because written agreement's terms "directly contradict any representations that plaintiff claims defendants made with respect to timing of the Project or the return of his investment and therefore he could not have reasonably relied on those representations"; the "unsustainability of plaintiff's fraud claim is bolstered by the Agreement's merger clause which establishes that" the Agreement is the "entire obligation of the parties with respect to the subject matter hereof").

Here, in addition to the express language regarding compensation, the Agreement, as set forth above, provides that it "supersedes any and all of the other agreements, either oral or in writing, between the parties hereto with respect to the subject matter hereof and contains all of the covenants and agreements between the parties with respect to such subject matter in any manner whatsoever"; that "[e]ach party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by any party, or anyone herein, and that no other agreement, statement or promise not contained in this Agreement shall be valid or binding"; that "[t]his Agreement, together with the documents and exhibits referred to herein, embodies the entire understanding among the parties and merges all prior discussions or communications among them"; and that "no party shall be bound by any definitions, conditions,

warranties, or representations other than as expressly stated in this Agreement, or as subsequently set forth in writing, signed by the duly authorized representatives of all of the parties hereto.  This agreement, when executed shall supersede and render null and void any and all preceding oral or written understandings and agreements" (Agreement § 11).  Clearly, Plaintiff's allegations are fully contradicted by the written Agreement and should be dismissed.

Further, Plaintiff alleges that it is a sophisticated party that specializes in complex securities transactions.  (See, e.g., AC ¶¶ 20, 22) ("[a]n IPO is a complicated process, especially for international companies like Defendant, and Plaintiff specialized in helping companies like Defendant obtain a public listing on the Nasdaq exchange (hence Plaintiff's name, Exchange Listings)" and "[t]he process is tedious, time consuming and takes significant effort").

By failing to insert the alleged 75% Floor promise into the Agreement, and instead agreeing to contradictory language and the Merger Clauses and No-Reliance Clauses, Plaintiff assumed the risk and for this reason as well fails to plead reasonable reliance on the alleged oral representations as a matter of law.  Phoenix, 2021 WL 3604663 at *17 ("New York courts have found that where a sophisticated party was 'put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation or inserting appropriate language in the agreement for his protection,' the party 'may truly be said to have willingly assumed the business risk that the facts may not be as represented'"; claim dismissed) (quoting Lazard Freres & Co. v. Protective Life Ins. Co, 108 F.3d 1531, 1543 (2d Cir. 1997)).  See, e.g., Emergent Capital Inv. Mgt., LLC v. Stonepath Group, Inc., 165 F. Supp. 2d 615, 622-23 (S.D.N.Y. 2001) (merger clause bars fraud claims when the clause and surrounding contract were the product of arm's-length negotiations between sophisticated parties); Harsco Corp. v. Segui, 91 F.3d 337, 345 (2d Cir. 1996) (same).

## POINT II

### THE UNJUST ENRICHMENT AND QUANTUM
### MERUIT CLAIMS (COUNTS II AND III) SHOULD BE DISMISSED

"When a plaintiff has asserted a claim based upon a valid and enforceable contract, an unjust enrichment claim should be dismissed as redundant." Brittain v. Trustees of Columbia University in the City of New York, 2021 WL 3539664, *9 (S.D.N.Y. August 11, 2021) ("[i]n the face of a valid and enforceable contract" the quasi-contract claims should be dismissed); Amable v. New School, 2021 WL 3173739, *12 (S.D.N.Y. July 27, 2021) ([b]ecause the Parties do not dispute that they shared a contractual relationship", the quasi-contract claims should be dismissed).

Plaintiff has asserted a breach of contract claim (AC ¶¶ 200-207) and pleads that the Agreement is an enforceable contract between the parties (see, e.g., AC ¶ 201).  For this reason alone, the quasi-contract claims should be dismissed as redundant.  Brittain, 2021 WL 3539664 at *9.

Plaintiff further alleges that the Agreement covers the same subject matter that forms the basis of its unjust enrichment and quantum meruit claims – work allegedly done by Plaintiff that purportedly led to Inspira's IPO (AC compare ¶¶ 59-61 with ¶¶ 133, 145).  Hence, Plaintiff's second and third claims for unjust enrichment and quantum meruit fail.  Id.; Amable, 2021 WL 3173739 at *12 ("under New York law a plaintiff cannot recover under quasi-contract claims such as unjust enrichment when an enforceable contract covers the same subject matter").

## POINT III

### THE BREACH OF COVENANT OF GOOD FAITH
### AND FAIR DEALING CLAIM (COUNT IV) SHOULD BE DISMISSED

"[A] party may maintain a claim for breach of the implied covenant [of good faith] only if the claim is based on allegations different from the allegations underlying the breach of contract

claim." <u>Sussman Sales Company, Inc. v. VWR International, LLC</u>, 2021 WL 1165077, *18 (S.D.N.Y. March 26, 2021) (Failla, J) (<u>quoting Deutsche Bank Secs., Inc. v. Rhodes</u>, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008)).

Plaintiff's claim for breach of the covenant of good faith and fair dealing fails because it is based on precisely the same facts as its contract claim.  In particular, in its breach of covenant of good faith claim, Plaintiff alleges that "Defendant agreed to abide by the terms of the Agreement", accepted "Plaintiff's efforts and performance" thereunder, and failed to "remit payment in return as set forth in the Agreement" (AC ¶¶ 151-152).  Accordingly, this claim should be dismissed.  <u>Id.</u> (claim dismissed because it is "entirely duplicative of the breach of contract claim" and alleges no legal duty separate and apart from the contractual duties); <u>see Cruz v. FXDirectDealer, LLC</u>, 720 F.3d 115, 125 (2d Cir. 2013) ("[u]nder New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract"; "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled").

**POINT IV**

**THE COMMON LAW FRAUD CLAIM<br>(COUNT V) SHOULD BE DISMISSED**

Plaintiff's common law fraud is essentially two-fold.  Initially, Plaintiff alleges that, prior to the Agreement (which was executed on September 30, 2020), Inspira allegedly promised Plaintiff a 75% Floor (AC ¶¶ 156-62).  These allegations are identical to the allegations set forth in its fraudulent inducement claim (Count I) and fail for the very same reasons (<u>see</u> Point I, <u>supra</u>).

Next, Plaintiff attempts to allege that a fraud happened approximately six months after execution of the Agreement as well.  In particular, Plaintiff alleges that the parties met on April

12

15, 2021 (AC ¶ 164).  At that time, Inspira had terminated Benchmark, the Introduced Banker introduced by Plaintiff, for "failure to close the IPO" (AC ¶ 170).  Plaintiff alleges that, at that meeting, Inspira "promised [Plaintiff] 75,000 shares if Plaintiff kept working on the IPO" (AC ¶ 185) (as it was required to do in any event under the Agreement (see "Scope of Work" at Agreement § 1.C.1).  Plaintiff alleges that this statement was "false and known to be false" when made and that Plaintiff reasonably relied thereon and continued providing services, yet did not receive the additional 75,000 shares (AC ¶¶ 186-190).  This claim fails for reasons similar to the fraudulent inducement claim, and for other reasons as well.

A.    **Plaintiff Merely Alleges An Unfulfilled Promise, Not a Misstatement Of Fact**.

First, the claim fails because, like the fraudulent inducement claim, the alleged misrepresentation – the "promise" of 75,000 shares – is promissory in nature, relating to future conduct and is not a false statement of presently existing fact.  Ricatto, 2019 WL 6681558, at *10 ("[i]t is a general rule that a claim of intentional misrepresentation cannot be predicated upon statements which are promissory in nature at the time they are made and which relate to future actions or conduct, because mere unfulfilled promissory statements as to what will be done in the future are not actionable"); Phoenix, 2021 WL 3604663 at *16 ("[t]o fulfill the element of misrepresentation of material fact, the party advancing the claim must allege a misrepresentation of present fact rather than of future intent").  Here, the alleged promise of 75,000 shares if Plaintiff continued working is not a false statement of presently existing fact but a promise of future performance, and therefore the claim should be dismissed for this reason alone.

B.    **The Fraud Claim Is Duplicative Of The Breach Of Oral Contract Claim**.

Second, Plaintiff's fraud claim is precisely the same as Plaintiff's seventh cause of action for alleged breach of an oral contract, and for this reason as well it should be dismissed as

duplicative.  "'[U]nder New York law, where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.'"  Gutkowski v. Steinbrenner, 680 F. Supp. 2d 602, 614 (S.D.N.Y. 2010) (quoting Telecom Int'l Am. Ltd v. AT &T Corp., 280 F.3d 175, 196) (2d Cir. 2001); Ricatto, 2019 WL 6681558 at *10 (same).  "In other words, simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform the obligations thereunder, is insufficient to state an independent tort claim."  Gutkowski, 680 F. Supp. 2d at 614 (granting motion to dismiss fraud claim as duplicative of contract clam).

Here, in its purported cause of action for breach of oral contract, Plaintiff alleges that Inspira "stated that Plaintiff should continue helping him build towards the upcoming IPO.  As consideration, Mr. Hayon [of Inspira] offered a minimum amount, or floor, of approximately 75,000 Ordinary shares.  Blum and Jaclin [of Plaintiff] accepted this verbal offer while at dinner, and continued providing services as consideration for the approximately 75,000 Ordinary Shares over the next few months" (AC ¶¶ 233-34).  Hence, this is precisely the same as the fraud claim, but without the allegation that the promise was knowingly false when made.  Indeed, both claims seek exactly the same damages, namely 75,000 shares or the purported cash equivalent of $1 million (compare AC ¶¶ 198-99 with ¶¶ 248-49).

Thus, "this is a quintessential attempt to dress up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder" and should be dismissed at the pleading stage.  U.S. Capital Partners, LLC v. Stanwich Capital Advisors, LLC, 2015 WL 4388421, *6 (S.D.N.Y. July 17, 2015 (Failla, J.)

4893-5311-8983, v.1

(internal quotation marks and citations omitted) (granting motion to dismiss fraud claim as duplicative); <u>Ricatto</u>, 2019 WL 6681558 at *11 (allegations that defendants made a promise they never intended to keep and lulled plaintiff into believing defendants would fulfill their contractual obligations "cannot suffice to state a fraud claim"; motion granted).

## C.    <u>Plaintiff Fails To Allege Reasonable Reliance</u>.

<u>Third</u>, as in its fraudulent inducement claim, Plaintiff fails to adequately plead reasonable reliance. As set forth above, the Agreement governs Plaintiff's performance relating to a potential IPO and the compensation Plaintiff would receive therefore (Agreement §§ 1 and 4). The purported promise to provide Plaintiff with 75,000 shares in return for continuing to work on the IPO would be an amendment to the terms of the written Agreement, and the Agreement, as set forth above, contains two provisions stating that it can only be amended in a writing signed by both parties.

Given the Agreement's "unambiguous prohibition on oral modifications, reliance on any purported oral assurance was unreasonable". <u>Everlast World's Boxing Headquarters Corp. v. Trident Brands Inc.</u>, 2020 WL 917058, *6 (S.D.N.Y. February 26, 2020) (dismissing fraud claim) (<u>citing</u> <u>Bank Leumi Trust Co. v. D'Evori Int'l, Inc.</u>, 163 A.D.2d 26, 32, 558 N.Y.S.2d 909, 915 (1st Dep't 1990) ("reliance is an essential element of [a fraud] claim or defense, and given the unambiguous terms of the loan agreement . . . any such reliance would not be justified . . . . The loan agreement expressly precludes reliance on any oral agreement to modify its terms"). Hence, Plaintiff fails to plead reasonable reliance.[3]

---

[3] Plaintiff's attempt to support its reasonable reliance claim by referencing the portion of the F-1 Registration Statement attached to the Amended Complaint at Exhibit 1 misses the mark. As the cover pages to that document evidence, the F-1 was not published until July 1, 2021 at the time of the IPO – which was nearly three months after the April 15 meeting where the alleged fraudulent statements were made, and therefore after Plaintiff purportedly continued to help assist on an IPO (<u>see</u> Affirmation of Gerry Silver, Esq., submitted herewith, at Ex. 1). Plaintiff could not have reasonably relied on something that did not occur until after alleged performance. The F-1 is further addressed in Point VII, <u>infra</u>.

## POINT V

## THE BREACH OF WRITTEN CONTRACT
## CLAIM (COUNT VI) SHOULD BE DISMISSED

"Where a contract's language is clear and unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss." Maniolos v. United States, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010) (citing Advanced Mktg. Group, Inc. v. Bus. Payment Sys., LLC, 300 Fed. Appx. 48, 49 (2d Cir. 2008) ("judgment as a matter of law is appropriate if the contract language is unambiguous."). Plaintiff does not allege that the Agreement is ambiguous.

Under the Agreement, as set forth above, the only avenues in which Plaintiff could earn additional compensation were upon a Safe Financing, if an Introduced Banker completed the IPO (Agreement Section 2, 4 and Schedule A), or if the Agreement was terminated. Plaintiff alleges and concedes that none of the foregoing occurred (compare AC ¶¶ 64-66 (listing Introduced Bankers introduced by Plaintiff to Inspira) with ¶ 100 (stating that Aegis completed the IPO, and Aegis was not listed by Plaintiff as an Introduced Banker); ¶¶ 62, 101 (no termination); no allegation that a Safe Financing occurred). Therefore, by the clear terms of the Agreement and the conditions for additional compensation set forth therein, no further compensation is owed to Plaintiff and Plaintiff's breach of contract claim must fail as a matter of law.

## POINT VI

## THE BREACH OF ORAL CONTRACT
## CLAIM (COUNT VII) SHOULD BE DISMISSED

As set forth above, in its breach of oral contract claim, Plaintiff alleges that the parties met on April 15, 2021 (AC ¶ 222), after Inspira had "terminated Benchmark", the banker Plaintiff had introduced to Inspira, for "failure to close the IPO" (AC ¶ 219). Plaintiff alleges that Inspira "stated that Plaintiff should continue helping him build towards the upcoming IPO. As consideration, Mr. Hayon [of Inspira] offered a minimum amount, or floor, of approximately 75,000 Ordinary shares.

16

Blum and Jaclin [of Plaintiff] accepted this verbal offer while at dinner, and continued providing services as consideration for the approximately 75,000 Ordinary Shares over the next few months" (AC ¶¶ 233-34).  This claim should be dismissed.

 As an initial matter, the subject matter of this alleged oral contract, Plaintiff's performance of services assisting Inspira in a potential IPO and receiving compensation therefore, is the express subject of the written Agreement between the parties.  Hence, this alleged oral contract would be an amendment thereto.

 However, as set forth above, the Agreement contains not one but two clauses stating that the Agreement may only be amended in writing.  In particular, § 11.C of the Agreement provides that "[t]his Agreement may be changed or amended only by an amendment in writing *signed by all of the Parties hereto*". (emphasis added).  Further, § 11.K of the Agreement provides: "No Oral Change; Waiver. This Agreement may only be changed, modified, or amended in writing by the mutual consent of the parties hereto. The provisions of this Agreement may only be waived in or by a writing signed by the party against whom enforcement of any waiver is sought".  Plaintiff concedes that there is no such writing signed by any or both parties; indeed it pleads this claims as a breach of "*oral* contract" (emphasis added).

 When an agreement contains a requirement that it can only be amended in a writing "signed by all parties" and there can be no waiver "unless such waiver is in writing and signed by the party waiving such right", and there is no evidence that such writing signed by both parties exists, the breach of oral contract claim fails as a matter of law.  Towers Charter & Marine Corp. v. Cadillac Ins. Co., 894 F.2d 516, 521-22 (2d Cir. 1990) (Section 15-301 of New York General Obligations Law precludes oral modifications when they are precluded by the underlying contract); Everlast, 2020 WL 917058, at *5 (S.D.N.Y. Feb. 26, 2020) ("if the only proof of an alleged agreement to

deviate from a written contract is the oral exchanges between the parties – as is the case here [ ] – the writing controls. Thus, the authenticity of any amendment is ensured.") (internal quotations omitted).

While there are "two narrow exceptions to this rule", namely if there is partial performance or an inducement of significant and substantial reliance to amount to an estoppel, "[f]or either exception to apply, however, the conduct 'must not otherwise be compatible with the agreement as written'". Everlast, 2020 WL 917058 at *5 (quoting Rose v. Spa Realty Assocs., 42 N.Y.2d 338, 344, 397 N.Y.S. 922 (1977).

Here, the Agreement as written requires Plaintiff to provide a host of services, including assistance towards an IPO (AC ¶ 59; see "Scope of Work" at Agreement § 1.C.1).  Hence, the services it allegedly provided after purported oral contract were "not incompatible with the [] Agreement's written terms.  Far from it", and the Agreement's "no-oral-modification clause govern, and [Plaintiff] may not maintain a claim for breach of the parties' purported oral agreement". Id. (internal quotation marks omitted) (citing Randolph Equities, LLC v. Carbon Capital, Inc., 648 F. Supp. 2d 507, 519 (S.D.N.Y. 2009) (finding no partial performance or detrimental reliance relating to an alleged oral modification where the plaintiff was already contractually obligated to make the monetary payment in question).

Indeed, for this reason as well, any oral agreement would fail for a lack of consideration, as Inspira received nothing it was not already entitled to under the Agreement.  Manufacturers Hanover Overseas Capital Corporation v. Southwire Company, 589 F. Supp. 214, 220 (S.D.N.Y. 1984) (purported agreement fails for lack of consideration when one party giving the other what it was already due); National Commercial Bank & Trust Co. v. Bart Boat Co., Inc., 41 A.D.2d 159,

161, 341 N.Y.S.2d 347, 349 (3d Dep't.1973) (performance of act that is legally required does not constitute adequate consideration).

Further, to the extent that Plaintiff relies upon the erroneous disclosure statement in the F-1 that Inspira allegedly agreed to provide Plaintiff with 73,321 shares, this claim fails. As an initial matter, in the Amended Complaint, Plaintiff tellingly does not share the date of that F-1, and attaches only an excerpt without including the cover page that reveals the date. The cover page shows that the date of the F-1 is July 1, 2021 (Silver Aff. Ex. 1), nearly three months *after* the April 15, 2021 meeting and *after* the IPO services were supposedly rendered, and therefore is not contemporaneous with the April 15 Meeting.[4]

Most significantly, however, the F-1 *is not signed by both parties*, and for this reason alone is insufficient to amend the Agreement. Moreover, the F-1 does not even state that it is an amendment to the Agreement, and it is not. It is a disclosure (albeit an erroneous one), not a binding, contemporaneous written amendment to the Agreement signed by both parties, and therefore is a non-event. The breach of oral contract claim should be dismissed.

## POINT VII

### THE ATTORNEYS' FEE CLAIM
### (COUNT VIII) SHOULD BE DISMISSED

Plaintiff's eighth claim for attorneys' fees fails because, for the reasons set for the herein, Plaintiff is not the prevailing party. Under the Agreement, Plaintiff was only entitled to the 150,000 Warrants or the equivalent, and Plaintiff fails to allege it did not receive same. Indeed, it

---

[4] Plaintiff purposefully does not plead the date or other facts underlying the disclosure in an attempt to make it seem as if it is something it is not. Inspira recognizes that, at this juncture on a motion to dismiss, it is limited to the facts alleged in the Amended Complaint, as well as documents incorporated by reference and of which the Court may take judicial notice. However, if this case proceeds, and it is respectfully submitted it should not, Inspira will demonstrate that the disclosure reflects Inspira's belief in July 2021 that the Agreement had been terminated and a termination fee was due. This belief proved to be erroneous and, as Plaintiff expressly and accurately pleads, the Agreement was never terminated (AC ¶¶ 62, 101). Accordingly, no termination fee is or was ever due from Inspira to Plaintiff.

concedes that it received the warrant equivalent prior to the filing of the Amended Complaint (AC ¶ 51 n.1).

## **CONCLUSION**

For the foregoing reasons, Inspira respectfully requests that the Court dismiss the Complaint, and grant any other relief this Court deems just and proper.

Dated:   New York, New York
         December 16, 2021

Respectfully submitted,

SULLIVAN & WORCESTER LLP
By: */s/ Gerry Silver*
     Gerry Silver, Esq.
     Anna Lea Setz, Esq.
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone:  (212) 660-3000
Facsimile:   (212) 660-3001
gsilver@sullivanlaw.com
asetz@sullivanlaw.com

*Attorneys for Defendant Inspira Technologies Oxy B.H.N. Ltd.*